IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Regina M. Rodriguez**

Case No. 23-cr-00390-RMR

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. LARRY E. CONNER,
2. TIMOTHY A. MCPHEE,
3. MARCIA G. PREDMORE,
4. RODERICK A. PRESCOTT,
5. SUZANNE B. THOMPSON, AND
6. WELDON W. WULSTEIN,

     Defendants.

---

**ORDER**

---

This matter is before the Court on several motions filed by Defendants in this case:

(1)   Defendant Marcia Predmore's Motion to Suppress Search of Her Home and Her Electronic Devices Seized Therein (ECF No. 286)[1];

(2)   Defendant Marcia Predmore's Motion to Suppress Statements Obtained From Post-Arrest, Un-Mirandized Interrogation and Request for Related Discovery Pursuant to Fed. R. Crim. P. 16 (ECF No. 288)[2];

---

[1] The Government filed its response (ECF No. 301) and Defendant Predmore filed her reply (ECF No. 307).

[2] The Government filed its response (ECF No. 303) and Defendant Predmore filed her reply (ECF No. 309).

(3)    Defendant Marcia Predmore's Motion to Dismiss Count 1 of the Superseding Indictment (ECF No. 287)[3];

(4)    Defendants' Objections to Government Witness Disclosures for Lizeth Maldonado (ECF Nos. 375[4], 386[5], 388[6], 392[7], 402[8]).[9]

The Court has reviewed the briefing and addresses each motion below.

## I.    DEFENDANT MARCIA PREDMORE'S MOTIONS TO SUPPRESS THE SEARCH OF HER HOME AND ELECTRONIC DEVICES THEREIN (ECF NO. 286)

### A.    Background[10]

Since 2016, Ms. Predmore and co-defendant Timothy McPhee have lived in their residence in Estes Park. Defendants Predmore and McPhee co-owned and operated a business called "Private Banking Concepts" ("PBC") out of their Estes Park residence. Ms. Predmore additionally sold life insurance policies through Mountain Solitude LLC, which also had the Estes Park residence as its registered address.

Defendants Predmore and McPhee have been accused of engaging in a conspiracy to defraud the United States through the use of an abusive tax shelter, as well as tax evasion. Mr. McPhee personally used the abusive tax shelter and encouraged

---

[3] The Government filed its response (ECF No. 302) and Defendant Predmore filed her reply (ECF No. 308).

[4] Defendant Thompson's Objection to Government Witness Disclosures for Mr. Dubinsky and Ms. Maldonado.

[5] Defendant Wulstein's Objection to Government Witness Disclosures for Mr. Dubinsky and Ms. Maldonado.

[6] Defendant Predmore's Objection to Government Witness Disclosures for Mr. Dubinsky and Ms. Maldonado.

[7] Defendant Prescott's Objection to Government Witness Disclosures for Mr. Dubinsky and Ms. Maldonado.

[8] Defendant Wulstein's Second Objection to Government Witness Disclosures for Mr. Dubinsky and Ms. Maldonado.

[9] The Government filed its responses (ECF Nos. 420, 421, 422) and Defendants filed their replies (ECF Nos. 463, 465, 472, 474). The Court previously ruled on the Defendants' Objections related to Mr. Dubinsky at the April 13, 2026 motions hearing. ECF No. 560. Therefore, the Court will only discuss Defendants' Objections related to Ms. Maldonado in this Order.

[10] The following facts are incorporated from the "Factual Background" sections of the parties' briefing. ECF Nos. 286, 301.

others to buy into it. On February 19, 2022, Defendant McPhee met with an undercover agent posing as a prospective client and told the undercover agent that he had spent five years marketing the trust program and personally used the trusts and private family foundation. In January 2023, PBC hosted a seminar where Mr. McPhee talked about his personal use of the tax shelter and told members of the audience that he personally put the title to his house in his family trust.

On September 6, 2023, the Indictment in this case was filed with the Court. On September 14, 2023, Special Agent Mike Garvey of the Internal Revenue Service ("IRS") Criminal Investigation Division drafted an Application for a search warrant of Defendants Predmore and McPhee's Estes Park home. The Application included an Affidavit, which explained why there was probable cause to believe evidence could be found at the residence. It also included two attachments: (1) Attachment A described the "Location to Be Searched" as "a single residence . . . occupied by Timothy McPhee and Marcia Predmore, and used by McPhee as the business office of Private Banking Concepts" and (2) Attachment B described the "Particular Things to be Seized" as "[a]ll information, devices, and records—including documentary, electronic, and digital evidence" relating to the 26 U.S.C. §§ 7201 and 7206(1) violations relating to federal income tax returns filed by Ms. Predmore and Mr. McPhee throughout tax years 2016 to 2021." Then-Magistrate Judge Crews signed the search warrant and, on September 22, 2023, the search warrant was executed. On September 24, 2023, Mr. McPhee and Ms. Predmore were arrested.

Ms. Predmore now "requests that the Court issue an Order suppressing as evidence in this case all items seized from her home pursuant to the overbroad, stale, and otherwise illegal search of her home, as a violation of the Fourth Amendment." ECF No. 286 at 12. In her reply, she also asks the Court for a hearing on the issue. ECF No. 307 at 5.

### B.    Analysis

First, the Court finds that a hearing is unnecessary on this motion. The choice to hold an evidentiary hearing on a motion to suppress is within the discretion of the Court. *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995). A hearing is required only when the motion to suppress raises "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *Id.* A district court may deny a request for an evidentiary hearing if the motion to suppress only argues about the legal effect of information, rather than disputes the underlying facts at issue. *See United States v. Mathews*, 928 F.3d 968, 978 (10th Cir)., cert. denied, 140 S. Ct. 460, 205 L. Ed. 2d 285 (2019). In this case, Defendant Predmore raises only legal issues about the sufficiency of the search warrant (nexus, staleness, overbroad) and does not challenge the factual allegations themselves. Therefore, the Court declines to hold an evidentiary hearing.

Next, Defendant Predmore argues that (1) there was insufficient nexus linking the alleged crime to Defendant Predmore's residence to support the search; (2) the search warrant was stale because it relied on emails sent three years prior; and (3) the search

warrant was overbroad—each of which violated her Fourth Amendment rights. The Court addresses each argument below

### 1.    Nexus

Defendant Predmore argues the "Application for this Warrant failed to establish that 'contraband or evidence of a crime' would be found at the Home." ECF No. 286 at 9. According to Ms. Predmore, the "Warrant only established that Ms. Predmore lived in the Home and had registered the address as a place of business for her life-insurance business (Mountain Solitude in 2016). *Id.* (emphasis original). There was "not one shred of evidence in the Application to establish that Ms. Predmore sent emails from that Home, that she had printed documents there, produced or sent any videos from there, or even taken a phone call from there related to these tax returns." *Id.* In her reply, she further argues that Attachment B does not correspond with Attachment A of the search warrant. ECF No. 307 at 1-2. Attachment B limits the items to be seized to "information . . . for each account or identifier listed on Attachment A" and then lists 18 categories of items. *Id.* at 2. However, Attachment A only references the residence occupied by Ms. Predmore and Mr. McPhee. *Id.* Defendant Predmore suggests "the search warrant limits the seizure of 'items' that concern the two crimes and relate to a list of accounts and identifiers that do not exist within the warrant" and, thus, the "officers could not have relied on a non-existent list when executing the warrant." *Id.*

The Government argues that (1) "the Affidavit established that evidence pertaining to the trusts McPhee and Predmore used to carry out the Abusive-Trust Tax Shelter would be found at the residence" because they used their residence as the mailing address for

the bank accounts held in the name of their trusts; (2) the "IP address records discussed in the Affidavit showed that McPhee frequently communicated with Predmore, Sanchez, and Wulstein via email from the residence" and "Sanchez and Wulstein prepared McPhee and Predmore's false tax returns for the years 2019, 2020, and 2021'"; (3) "the Affidavit explained that Predmore funneled income she earned from selling life-insurance policies into her and McPhee's trusts," and her income came through Mountain Solitude LLC, which had a registered address at Defendant Predmore and McPhee's residence; and (4) "the Affidavit explained that McPhee and Predmore jointly operated PBC from their residence, which strongly suggested that any records related to their finances (e.g., income, expenses, etc.), including records on devices, would have been located there." ECF No. 301 at 9-10.

Probable cause "requires a nexus between suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). Such nexus exists "once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) (internal quotation marks omitted). The issuing judge may draw reasonable inferences based on practical considerations as to the likelihood that evidence will be found in a particular place. *Id.* at 1280. The affidavit "need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).

After reviewing the Affidavit and Attachments thereto, the Court finds that there was an adequate nexus linking the alleged criminal activity to Defendant Predmore's residence. First, Defendant Predmore does not deny that there was substantial evidence linking her to the residence. Second, the Affidavit provides a direct link between the alleged tax crimes and the residence. The residence served as the place of business for both of Defendant's Predmore's businesses, PBC, and Mountain Solitude. Both businesses are alleged to have been involved in the alleged tax crimes. A reasonable inference can be made that documents pertaining to Defendant Predmore's business and finances would be located at her place of business and home. Additionally, Defendant Predmore used the address of the residence for the bank accounts of the trusts purportedly used to facilitate the alleged tax crimes. IP address records demonstrate that her co-defendant, and husband, sent emails from the residence to tax preparers who prepared Defendant Predmore's allegedly false tax returns. It would reasonably follow that evidence of the alleged tax crimes would be found at the residence. Because the information in the Affidavit set forth a substantial basis linking the residence to the alleged tax crimes, this Court finds that the Affidavit satisfied the nexus requirement.

With respect to the alleged discrepancy between Attachment A and Attachment B of the Affidavit, the Court does not find this error was knowingly or recklessly false under the circumstances. Attachment B outlines and limits the items to be seized from the "the account or identifier" of Attachment A. The fact that Attachment A describes a "Location to Be Searched" rather than an "account or identifier" does not create sufficient confusion to render the Affidavit or Attachments unclear for the officers executing the search warrant.

7

Further, this typographical error does not negate the nexus linking the alleged crime to Defendant Predmore's residence to support the search

### 2. Staleness

Next, Defendant Predmore argues the search warrant was "stale" because "[i]t relied on emails sent three years prior." ECF No. 286 at 10. She alleges the "application was devoid of any recent information demonstrating that evidence of any crime was likely to be found in the Home in September 2023." *Id.* In her reply, she further purports the Government "offers no authority to support their argument that statements made 9-18 months earlier" would "strongly suggest" that records related to the trusts would still exist in the residence. ECF No. 307 at 2-3. She also argues the facts included in the warrant— the filing of a tax return in 2021, the purchase of a green screen three years earlier, or emails about a webinar three years earlier—would not indicate that tax returns from seven years prior would still exist in the home. *Id.* at 3.

The Government responds that "the Affidavit established probable cause to believe McPhee and Predmore were still using the Abusive-Trust Tax Shelter in 2023" because McPhee stated to an undercover agent on February 19, 2022 that he was personally using the tax shelter. ECF No. 301 at 10. In January 2023, at a PBC seminar, Mr. McPhee discussed his personal use of the tax shelter and that he held his residence in his family trust. *Id.* at 11. Further, Defendants Predmore and McPhee filed a joint individual income tax return for tax year 2021 and filed tax returns for their trusts for 2021 as well. *Id.* The Government emphasizes the fact that the place to be searched was Defendant Predmore's residence. *Id.* "Unlike a hotel room or an office space that is no longer

occupied," the Government contends there was probable cause to believe Defendants Predmore and McPhee "continued to keep records related to their use of the Abusive-Trust Tax Shelter in their home"—especially because the investigation was covert. *Id.*

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-7 (10th Cir. 2004) (quoting *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990)). To determine whether information is "stale," courts evaluate a number of factors, including "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* at 1207. Though the age of the information is relevant to the staleness analysis, "ongoing and continuous activity makes the passage of time less critical," undermining a staleness claim. *Id.* Further, if the property sought is likely to be kept in one place for a considerable time—like business records and tax documents—"probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986).

Here, the information supporting the warrant was not stale, because the affidavit recites facts indicating ongoing, continuous criminal activity. Therefore, the passage of time becomes less critical. *Id.* The Affidavit provided evidence that Defendants Predmore and McPhee co-owned and operated PBC from their residence in Estes Park. On February 19, 2022, McPhee told an undercover agent "that he has spent five years marketing this trust program and that he personally uses trusts and private family foundations" and that "PBC is the hub" of all the services offered by various bookkeeping

9

and return-preparation entities to clients who purchase the Abusive-Trust Tax Shelter. ECF No. 286-1 at 43-44. PBC would charge the undercover agent "$25, 000 to setup a trust package and another $ 25,000 to setup a family foundation." *Id.* at 44. Additionally, the Affidavit provided information that for tax years 2016 through 2021 Defendants Predmore and McPhee used various trusts to evade their own individual federal income taxes.

This was a long-term enterprise. There was no indication that Defendant Predmore's businesses ceased to exist in 2023. Additionally, Defendants Predmore and McPhee did not move. An inference can be made that businesses maintain their business records in the place of business, which in this case is the residence. An inference can also be made that couples maintain records of their tax returns in their residence for several years. There was no sign that Defendants Predmore and McPhee ceased their criminal activity. All of this information suggested that Defendant Predmore was engaged in ongoing criminal activity, which undermines her staleness claim. Defendant Predmore has not provided this Court any case law to suggest that a specific gap in time between the issuance of a warrant for tax crime evidence and the last piece of information supporting the warrant makes the warrant stale, and the Court has not found any. *United States v. Tozer*, No. 08-20177, 2009 WL 3698549, at *2 (E.D. Mich. Nov. 5, 2009) ("The court's finding that there was no probable cause that Defendant's residence and home contained evidence of a crime was not based on the fact that the warrant was issued in 2005 and the allegations of tax evasion were for the years 2001 through 2003. Indeed, had the Affidavit in Support of Search Warrant indicated sufficient proof that the records

were located at the business or home, the gap between the date of the records and the date of the warrant would not prohibit a finding of probable cause.). Therefore, the Court finds that the information relied upon to issue the Warrant was not stale.

### 3.    Overbroad

Finally, Defendant Predmore purports that the authority granted by Attachment B to seize almost everything within the residence was overly broad. ECF No. 286 at 11. Defendant Predmore argues that, while the two Subject Offenses were limited to tax years 2016-2022, the warrant itself did not limit the evidence to be seized to documents related to those tax years. *Id.* Additionally, Defendant Predmore suggests the "'catch-all authorization to seize 'evidence indicating the state of mind of McPhee, Predmore, and [others]' over-rode any limitations that the Introduction to Attachment B might have suggested applied." *Id.* Defendant Predmore highlights that the officers executing the warrant "seized every computer, hard-drive, and thumb-drive in the Home, without learning until six months later that a hard-drive had nothing relevant on it." *Id.* In her reply, Defendant Predmore reiterates that the Attachments did not specify with particularity the evidence to be searched. ECF No. 307 at 3-4.

The Government argues "Attachment B to the Affidavit carefully limited the items the government could seize from the residence," specifically to items related to the federal offenses described in detail in the search warrant application. ECF No. 301 at 11. According to the Government, "each of the eighteen categories of information sought in Attachment B tie back to either the targets, the targets' entities, the taxpayer clients, and/or the subject offenses as described in the Affidavit and defined in Attachment B." *id.*

11

at 11-12. The Government notes it is "customary practice for the government to remove devices from the premises, image the devices at another location, and return the devices once the imaging ins complete, given the "time constraints and technological limitations of the seizing agents on-site." *Id.* at 13.

A warrant is overbroad if it "describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *United States v. Cotto*, 995 F.3d 786, 798 (10th Cir. 2021) (quotation omitted). But even a "warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990). And even if a warrant is overbroad, "evidence should be suppressed only as 'a last resort, not a first impulse.'" *United States v. Gaye*, 130 F.4th 865, 872 (10th Cir. 2025) (quoting *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006).

For digital information searches, "warrants may pass the particularity test if they limit their scope either to evidence of specific federal crimes or to specific types of material." *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017) (quotation omitted). So long as the Court "can discern some 'limiting principles' to the warrant, 'broad authorization[s]' are permissible." *United States v. Salas*, 106 F.4th 1050, 1057 (10th Cir. 2024 (quoting *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021) (quotation omitted)).

In *United States v. Leary*, 846 F.2d 592, 594 (10th Cir. 1988), the Tenth Circuit found a warrant overbroad because it permitted the search and seizure of

12

"[c]orrespondence, Telex messages, contracts, invoices, purchase orders, shipping documents, payment records, export documents, packing slips, technical data, recorded notations, and other records and communications relating to the purchase, sale and illegal exportation of materials in violation of" two statutes. The Tenth Circuit concluded that "[a]bsent other limiting factors," a warrant containing just "[a]n unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant." *Id.* at 602. The Tenth Circuit found that the list of business records to be seized was not a sufficient limiting mechanism because the warrant "encompassed virtually every document that one might expect to find in a modern export company's office." *Id.*

 *Leary* is distinguishable. In the instant case, the warrant does not "encompass[ ] virtually every" record that could be found in the residence or on an electronic device. *Id.* Rather, it contains specific limiting principles narrowing the type of evidence subject to the search. Those limitations include, for example, "Records and information regarding MCPHEE's, D. HOOPER's, CONNER's, WULSTEIN's, SANCHEZ's, ELLSWORTH's, STAUFFER's, THOMPSON's, JAMES's, and C HOOPER's communications about Trusts or IRC 501(c)(3) entities, including promotional materials" or "Records and information related to the actual taxable income and assets during tax years 2016 through 2022 for MCPHEE, PREDMORE, and the TAXPAYER CLIENTS, and any trust, business, or charitable organization that they own, control, manage, or operate." *See* ECF No. 286-2 at 6-8; *see also United States v. Brooks*, 427 F.3d 1246, 1253 (10th Cir. 2005) ("[W]e are faced with a warrant that authorized officers to search through computer files for particular items specifically related to child pornography. . . . While the warrant could have been

more artfully written, we are satisfied on these facts that it falls within the particularity requirement of the Fourth Amendment."); *United States v. Whitmore*, No. 20-cr-40004-TC, 2021 WL 2604971, at *6 (D. Kan. June 24, 2021) ("The context and structure of the warrant confirms that the limitation to the crime of bank robbery was intended to and would be reasonably understood as a limit on any search."). The warrant does not "authorize[ ] the seizure of items as to which there is no probable cause," *Cotto*, 995 F.3d at 798, and is not overbroad.

Here, the search warrant does authorize a search for evidence of Defendant Predmore's state of mind "as related to the Subject Offenses," ECF No. 286-2 at 9, which is defined as "violations of 26 U.S. C. § 7201 (tax evasion) and 26 U. S. C. § 7206(1) making and subscribing a false return) relating to federal income tax returns filed by TIMOTHY MCPHEE ("MCPHEE") and MARCIA PREDMORE ("PREDMORE") throughout tax years 2016 to 2021, *id.* at 5. While this could capture a wide swath of evidence, this broad authorization is permissible under Tenth Circuit authority due to the limiting principles therein. *Russian*, 848 F.3d at 1245; *see United States v. Lustyik*, No. 2:12-cr-00645-TC, 2014 WL 1494019, at *7 (D. Utah Apr. 16, 2014) (limitation that documents seized must relate to the crimes being investigated "was more than sufficient to limit the scope of the warrants"); *United States v. Ortega*, No. 21-CR-665 MV, 2023 WL 2712533, at *3 (D.N.M. Mar. 30, 2023) (finding warrant sufficiently particular where it limited search to cellphone records "that relate[d] to violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c)," as this was a "limiting principle [instructing] that officers were only

permitted to search and seize evidence relating to the two federal drug and firearm offenses charged"). Therefore, the Court finds that the search warrant was not overbroad.

### C.    Conclusion

For the reasons stated herein, Defendant Marcia Predmore's Motion to Suppress the Search of Her Home and Her Electronic Devices Seized Therein, ECF No. 286, is DENIED.

## II.    DEFENDANT MARCIA PREDMORE'S MOTION TO SUPPRESS STATEMENTS OBTAINED FROM POST-ARREST, UN-MIRANDIZED INTERROGATION AND REQUEST FOR RELATED DISCOVERY (ECF NO. 288)

### A.    Background[11]

On September 23, 2023, when the search warrant was executed at their residence in Estes Park, Defendants Predmore and McPhee were out of town but spoke with agents over the phone during the course of the execution. ECF No. 288 at 2. When Defendants Predmore and McPhee landed back in Denver on September 24, 2023, several federal agents and Denver Police Officers were waiting for them. The officers handcuffed Defendants Predmore and McPhee and advised them not to speak before the officers read them their rights. Defendant Predmore was placed in the back of a police vehicle and taken to an interview room. Inside that room, Defendant Predmore was questioned by agents, but the interview was not captured on body worn camera ("BWC") or included in any report.

---

[11] The following facts are incorporated from the "Factual Background" of Defendant Predmore's Motion, ECF No. 288.

Defendant Predmore requests that the Court order the Government to "produce any discovery related to Ms. Predmore's interaction with law enforcement during the period from arrest until she was released from custody as required by Crim P. Rule 16." ECF No. 309 at 1. Although the Government "does not seek to admit such statements, or the fruits of such statements, at trial," ECF No. 303 at 1, Defendant Predmore asserts she is still entitled to those statements pretrial, ECF No. 309 at 2.

At the Status Conference on March 11, 2026, the Court denied as moot the portion of this motion that requests the Court to suppress Defendant Predmore's statements post-arrest, because the Government does not intend to use them at trial. ECF No. 481. The Court ordered the parties to identify what discovery remains outstanding at the Motions Hearing scheduled for March 24, 2026. *Id.*

**B.    Analysis**

Pursuant to Fed. R. Crim. P. 16(a)(1)(B), "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (i) any relevant written or recorded statement by the defendant if: statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists; (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent."

According to the facts provided by Defendant Predmore, there may be relevant written or recorded statements within the possession of the government that contain

16

relevant oral statements made before or after Defendant Predmore's arrest on September 23, 2023. Under Fed. R. Crim. P. 16(a)(1)(B), Defendant Predmore is entitled to such documentation upon request. Therefore, the Government must disclose to Defendant Predmore (i) any relevant written or recorded statement by Defendant Predmore if it is within the Government's possession, custody, or control and the Government knows the statement exists; and (ii) the portion of any written record containing the substance of any relevant oral statement made before or after Defendant Predmore's arrest if the statement was made in response to interrogation by a government agent.

### C.     Conclusion

Accordingly, Defendant Predmore's Motion (ECF No. 288) is GRANTED IN PART with respect to any written or recorded statements made in response to interrogation before or after Defendant Predmore's arrest that are within the Government's possession; and DENIED IN PART AS MOOT with respect to the request to suppress Defendant Predmore's statements post-arrest.

### III.     DEFENDANT MARCIA PREDMORE'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT (ECF NO. 287)

Defendant Predmore "requests that the Court dismiss Count One of the Superseding Indictment returned on April 24, 2024 for failure to state an offense and lack of specificity" pursuant to Rule 12(b)(3)(B)(iii) and (v) of the Federal Rules of Criminal Procedure." ECF No. 287 at 1. The Government responds that the "challenges she raises to the conspiracy charge are defenses she must raise at trial, not at this posture," because the Court must accept the allegations as true on a motion to dismiss. ECF No. 302 at 1.

17

In her reply, Defendant Predmore requests the Court schedule a hearing for oral argument. ECF No. 308 at 1.

### A.    Background

After reviewing countless motions and holding several hearings in this case, it is clear to the Court that this case involves a complex scheme with many players. However, when reviewing a motion to dismiss under Fed. R. Crim. P. 12(b)(3)(B), the Court must look at the indictment or information. The Superseding Indictment in this case, filed on April 24, 2024, spans sixty pages and summarizes the alleged conspiracy in detail.

As part of the alleged conspiracy, Defendants Conner and McPhee promoted the abusive tax shelter at virtual and in-person seminars and workshops held across the country. ECF No. 93 ¶ 56. Defendant Conner hosted seminars through his business name, The Business Solutions Group ("TBSG"). *Id.* Defendants McPhee and Predmore co-hosted seminars about the tax shelter in the name of their co-owned business, Private Banking Concepts ("PBC"). *Id.* Through PBC, Defendants McPhee and Predmore "promoted and sold purported financial and tax-mitigation strategies to U.S. taxpayers," including whole life insurance policies that Defendant Predmore sold to earn commission. *Id.* ¶¶ 11, 60. Additionally, Defendant Prescott hosted seminars in the name of his business, The Stewardship Institute ("TSI"), under the alias "Rick Scott." *Id.* ¶¶ 14, 67.

When clients purchased the tax shelter, they were sent instructions to pay the associated fees by wire transfer to a bank account purportedly held in the name of TBSG that was controlled by Defendant Conner. *Id.* ¶ 59. Defendants Predmore, McPhee, Thompson, and Wulstein all referred clients to Defendant Conner to purchase the trusts.

*Id.* ¶¶ 61, 85, 86. Then, Defendant Prescott and two unindicted co-conspirators prepared the trust and foundation instruments, and Defendant Conner paid them a portion of the clients' fee for their services. *Id.* ¶¶ 62, 63.

Finally, Defendant Thompson founded and operated a bookkeeping firm called The CFO Agency. *Id.* ¶ 17. Defendant Wulstein, a Certified Public Accountant ("CPA"), operated a return-preparation firm called Wulstein Financial Services. *Id.* ¶ 19. Defendants Predmore, McPhee and Conner referred clients to Defendants Thompson and Wulstein for the bookkeeping and tax return preparation services necessary to carry out the tax shelter. *Id.* ¶¶ 70, 106, 107.

## B.    Legal Standard

An indictment may be dismissed if the facts alleged in the indictment fail to invoke the Court's jurisdiction or state an offense. Fed. R. Crim. P. 12(b). In this Circuit, an indictment is sufficient if it: (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what she must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Typically, a court ruling on a motion to dismiss is limited to considering the allegations in the indictment. *Id*. But under Tenth Circuit precedent, the court may consider evidence "beyond the four corners of the indictment" if "the underlying facts were essentially undisputed." *Id.*

To support a conviction under 18 U.S.C. § 371, the Government must allege and prove five elements: (1) the defendant agreed with at least one other person <u>to obstruct</u>

19

the IRS by deceitful or dishonest means; (2) one of the conspirators engaged in at least one overt act furthering the conspiracy's objective; (3) the defendant knew the essential objective of the conspiracy; (4) the defendant knowingly and voluntarily participated in the conspiracy; and (5) there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. Pattern Crim. Jury Instr. 10th Cir. 2.19 (Conspiracy) (2025); *United States v. Kearney*, 150 F.4th 1328, 1335 (10th Cir. 2025) (finding that trial court's jury instruction for charge of conspiracy to defraud the United States impermissibly omitted an essential element of the crime charged—to obstruct the IRS by deceitful or dishonest means).

## C.    Analysis

Defendant Predmore purports that Count 1 in the Superseding Indictment fails to allege the elements of a Conspiracy as to Defendant Predmore and, thus, fails to adequately inform her of the charge against her. ECF No. 287 at 1-2. According to Defendant Predmore, the Superseding Indictment "fails to allege any agreement; that Ms. Predmore knowingly and intentionally entered into that agreement; that, whatever the agreement, it had as its common objective an illegal object to obstruct a lawful function of the federal government; and that Ms. Predmore had the requisite intent that such illegal object would in all likelihood follow from such agreement." *Id.* at 6. Defendant Predmore asserts that she is "noticeably absent" in the section describing the promotion and selling of the tax shelters. *Id.* at 2. In her view, she is only alleged to have referred clients to Defendants Conner and Thompson and assured individuals that the tax shelter was a

legal tax-reduction method—both of which are "acts consistent with purely innocent behavior." *Id.* at 3. The crux of Defendant Predmore's argument is that she did not "knowingly and intentionally" enter into an agreement, because "[m]ere presence at, or even 'hosting' a workshop, does not amount to an 'agreement' with everything taught at that workshop, much less even comprehension of what is being taught." *Id.* at 6 (citations omitted).

The Government contends that these challenges brought by Defendant Predmore are inappropriate at the motion to dismiss stage and may be brought at trial. ECF No. 302 at 1. In the Government's view, "[e]ach defendant relied on the others for their respective roles and contributions to facilitate the conspiracy." *Id.* at 2. Additionally, "there is no requirement that an indictment allege specifics about *how* an agreement was made." *Id.* at 7 (citing *United States v. Doe*, 572 F.3d 1162, 1174-75 (10th Cir. 2009)). The Government argues "not only does the superseding indictment allege the nature of the agreement, the parties to the agreement, and the duration of the agreement, but it also alleges facts that can be used to infer a tacit agreement to defraud the IRS." *Id.* Therefore, the Superseding Indictment "sufficiently alleges that Predmore and her co-conspirators committed overt acts in furtherance of the conspiracy to defraud the IRS, and it sufficiently put Predmore on notice of how she is alleged to have participated in the conspiracy." *Id.* at 8.

Defendant Predmore's Motion to Dismiss purports that the allegations asserted in the Superseding Indictment are not sufficiently clear or specific, as they relate to Defendant Predmore and her actions, under Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v).

21

Specifically, Defendant Predmore alleges the Superseding Indictment describes "separate conspiracies rather than one" and, therefore, her charges under Count 1 must be dismissed. ECF No. 287 at 2. The Court's interpretation is different. To the Court, the Superseding Indictment alleges that Defendant Predmore did more than set out cookies at a seminar. Instead, the Superseding Indictment alleges specific actions by Defendant Predmore that provide circumstantial evidence that she agreed with at least one of her co-defendants to obstruct the IRS by deceitful or dishonest means.

The Superseding Indictment describes particular actions taken by Defendant Predmore to refer clients to purchase the tax shelter. It states: "On or about January 23, 2019, PREDMORE referred prospective client D.A. to CONNER via email to purchase the Abusive-Trust Tax Shelter. In her email to D.A. and CONNER, PREDMORE attached the TBSG Slideshow." ECF No. 93 ¶ 85. It also states: "On or about January 29, 2019, PREDMORE referred prospective clients C.K. and B.B. to CONNER via email to purchase the Abusive-Trust Tax Shelter. In PREDMORE's email to C.K., B.B., and CONNER, PREDMORE attached the TBSG Slideshow." *Id.* ¶ 86.

Additionally, the Superseding Indictment alleges specific actions by Defendant Predmore to refer clients to Defendants Thompson and Wulstein. For example, "On or about June 2, 2020, PREDMORE referred clients R.U. and Y.U. via email to THOMPSON and WULSTEIN for accounting, bookkeeping, and tax return preparation services consistent with the Abusive-Trust Tax Shelter." *Id.* ¶ 106. Additionally, "On or about June 2, 2020, PREDMORE referred clients R.U. and Y.U. via email to THOMPSON and

WULSTEIN for accounting, bookkeeping, and tax return preparation services consistent with the Abusive-Trust Tax Shelter." *Id.* ¶ 107.

The Superseding Indictment further describes alleged communications from Defendant Predmore to clients directly related to the legitimacy of the tax shelters. "On or about February 17, 2023, after an individual with the initials B.W. emailed PREDMORE to raise concerns about articles indicating that the Abusive-Trust Tax Shelter is a 'scam,' PREDMORE responded: 'We have seen this many times[.] I will also let Tim chime in but we are NOT the GRANTOR of the trusts[.]'" *Id.*

These allegations are specific to Defendant Predmore and demonstrate that the Superseding Indictment includes sufficient facts to satisfy each of the elements of 18 U.S.C. § 371. Additionally, the Court has little doubt that the Superseding Indictment apprises Defendant Predmore with enough information to prepare her defense. Therefore, the Court finds Superseding Indictment in this case is specific enough to satisfy the Federal Rules of Criminal Procedure.

### D.      Conclusion

Accordingly, Defendant Marcia Predmore's Motion to Dismiss Count One of the Superseding Indictment, ECF No. 287, is DENIED.

## IV.    DEFENDANTS' OBJECTIONS TO GOVERNMENT WITNESS DISCLOSURES FOR MS. MALDONADO (ECF NOS. 375, 386, 388, 392, 402)

### A.      Background

Lizeth Maldonado is a Revenue Agent ("RA") employed by the IRS and expected to testify as a government witness at trial. At the March 24, 2026 hearing, the Court determined that her testimony regarding general tax loss calculations do not require

23

expert testimony and, instead, is Fed. R. Evid. 701 testimony. The Court granted the

Government until March 27, 2026 to make further adjustments to Ms. Maldonado's

calculations or disclosures under Fed. R. Crim. P. 16. The Government indeed filed Ms.

Maldonado's supplemental notice on March 27, 2026. ECF No. 510-2. Defendants

Predmore and Wulstein objected to the supplemental notice, ECF Nos. 520, 522, and the

Government responded to the objections, ECF No. 536.

The Court held a second motions hearing on April 13, 2026, and Defendants

expressed concern over Ms. Maldonado's supplemental notice. The Court deferred ruling

on her witness disclosures after further review of Ms. Maldonado's report.

### B.    Legal Standard

Under the Federal Rules of Evidence, a lay witness may offer opinion testimony if

it is "rationally based on the witness's perception," "helpful to clearly understanding the

witness's testimony or to determining a fact in issue," and "not based on scientific,

technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid.

701. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness

testimony. Rule 702 imposes on the district court a "gatekeeper function to 'ensure that

any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"

*United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

To perform that function, the court must perform "a two-step analysis." *Roe v. FCA*

*US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D*

*Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the court must determine whether the

expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702). Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability. *Id.* at 1180–81; Fed. R. Evid. 702(b)-(d). The opinions are reliable if the proponent of a qualified expert witness demonstrates to the Court that it is "more likely than not" that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact or issue;" (b) the expert testimony is "based on sufficient facts or data;" (c) the expert testimony "is the product of reliable principles and methods;" and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

To demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). Establishing reliability does not require showing that the expert's testimony is indisputably correct. *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness). However, expert testimony "may not be admitted unless the proponent demonstrates that it is more likely than not that the proffered testimony meets . . . the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules." Fed. R. Evid.

25

702, advisory committee's note to 2023 amendments. If the court finds it more likely than not that the proponent demonstrates an expert has a sufficient basis to support an opinion and "that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." *Id.*

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), "the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under the Federal Rules of Evidence 702, 703, or 705." Section (iii) outlines the disclosure requirements for each expert witness, which includes "a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, or during its rebuttal," "the bases and reasons for them," "the witness's qualifications, including a list of all publications authored in the previous 10 years," and

"a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii).

## C.    Analysis

Defendants' objection to Ms. Maldonado's witness disclosure centers around their belief that she is offering Fed. R. Evid. 702 expert testimony and, thus, subject to heightened disclosure standards under Fed. R. Crim. P. 16. Indeed, if Ms. Maldonado's testimony is expert testimony, she is required to disclose "a complete statement of all opinions that the government will elicit from the witness" and "the bases and reasons for them" Fed. R. Crim. P. 16(a)(1)(G)(iii).

"Testimony by an IRS agent that allows the witness to apply the basic assumptions and principles of tax accounting to particular facts is appropriate in a tax evasion case." *United States v. Sorensen*, 148 F.4th 992, 996 (8th Cir. 2025) (citing *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011). In *Sorensen*, the Eighth Circuit explained that the IRS Agent's "testimony was based on her work *in this case*, and testimony of a summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination." *Id.* at 997. Additionally, the IRS Agent "relied on her industry experience to complete her assignment. Perceptions based on industry experience are a sufficient foundation for lay opinion testimony." *Id.* at 997. However, the IRS Agent in *Sorensen* did not independently compute her own calculations. *Id.* Instead, she pulled them from the IRS's system." *Id.*

Here, Ms. Maldonado is an IRS Revenue Agent expected to introduce evidence and offer testimony related to the banking activity and tax returns of Defendants and the

tax loss resulting from the alleged conspiracy. Specifically, she is offering five categories of testimony: (1) the banking activity and relevant tax returns for Defendants Predmore and McPhee and the computations she will perform to determine the tax loss caused by Defendants Predmore and McPhee's use of the Abusive-Trust Tax Shelter from 2016 through 2021; (2) the banking activity and relevant tax returns for the taxpayers listed in Counts 2 through 7 and the tax loss resulting from those taxpayers' use of the Abusive-Trust Tax Shelter for the years charged; (3) the tax loss resulting from the conspiracy to promote the Abusive-Trust Tax Shelter charged in Count 1; (4) Defendant Thompson's personal use of the Abusive-Trust Tax Shelter to conceal income from the IRS; and (5) the flow of funds among Conner, Charles Hooper, Prescott, and Tony Franklin, including the fees Conner paid Prescott for the foundation instruments. ECF No. 510-2.

Ms. Maldonado will testify that "she examined tax returns, bank records, financial statements, and other records pertaining to the § 7206(2) taxpayers." *Id.* at 8. Her testimony will be based on her work and the evidence received in this case. She is expected to "apply the basic assumptions and principles of tax accounting to particular facts," which is appropriate lay witness testimony in tax evasion cases. *Sorensen*, 148 F.4th at 996. For Ms. Maldonado, such categories of Rule 701 testimony include: (1) the banking activity and relevant tax returns for Defendants Predmore and McPhee and the computations she will perform to determine the tax loss caused by Defendants Predmore and McPhee's use of the Abusive-Trust Tax Shelter from 2016 through 2021; (4) Defendant Thompson's personal use of the Abusive-Trust Tax Shelter to conceal income from the IRS; and (5) the flow of funds among Conner, Charles Hooper, Prescott, and

Tony Franklin, including the fees Conner paid Prescott for the foundation instruments. The Tenth Circuit has held that "tracing" testimony based on "account balances, using addition and subtraction, to track flows of funds between [] two entities" or "a series of transactions between a group of entities" is proper testimony under Rule 701. *United States v. Dermen*, 143 F.4th 1148, 1212-13. The analysis of the banking activity and tax returns in the above described categories of testimony involve such "tracing" testimony and requires no more than basic addition and subtraction. Therefore, it is Rule 701 testimony. Rule 16 does not require the Government to disclose non-expert opinions and the bases and reasons for them. Thus, with respect to Ms. Maldonado's Rule 701 testimony, her disclosure is more than adequate.

Based on the Court's understanding of relevant (although not binding) case law, witness computations of overall tax loss in tax evasion cases fall under Rule 702 testimony and are subject to the disclosure requirements of Rule 16(a)(1)(G). *See United States v. Vallone*, No. 04 CR 0372, 2008 WL 516715, at *1 (N.D. Ill. Feb. 21, 2008) (analyzing the testifying agent's expert disclosure regarding "overall tax loss resulting from the conspiracy"). In this case, these computations fall within Ms. Maldonado's opinions related to (2) the banking activity and relevant tax returns for the taxpayers listed in Counts 2 through 7 and the tax loss resulting from those taxpayers' use of the Abusive-Trust Tax Shelter for the years charged; and (3) the tax loss resulting from the conspiracy to promote the Abusive-Trust Tax Shelter charged in Count 1.

For category (2), Ms. Maldonado's notice explains her opinion that the income of the taxpayers who used Defendants Thompson and Wulstein's services to prepare false

Form 1040s was taxable income. ECF No. 510-2 at 7-8. She provides the basis of her opinions, specifically her training, experience, and review of the documentation in this case. *Id.* at 8. She will summarize the "voluminous bank statements, tax returns, and other financial records relating to the § 7206(2) taxpayers" to show that they "never lost control of the income they assigned to their trusts." *Id.* Then, she will walk the jury through tax loss computations to determine the loss resulting from the false Form 1040s. *Id.* This will assist the jury in determining whether those Forms 1040 contained a materially false item. *Id.*

For category (3), Ms. Maldonado's notice states that she "will explain how she calculated the resulting loss for Count 1" by using "summary charts admitted pursuant to Federal Rule of Evidence 1006 that summarize voluminous tax returns for taxpayers who purchased and used the Abusive-Trust Tax Shelter." ECF No. 510-2 at 9. She is also "expected to testify to how these taxpayers were identified for purposes of the tax loss computations for Count 1" and that "she used the 'specific item' method of proof to calculate the tax loss caused by the conspiracy charged." *Id.* Additionally, she "will further explain that she summed up the income reported on the first tier of the Abusive-Trust Tax Shelter (i.e., the business trust) for the individuals using the tax shelter and then multiplied that figure by 28% to arrive at the loss figure." *Id.*

Under the Court's review, the Government has satisfied its Rule 16 disclosure requirements for Ms. Maldonado's expert opinions in categories (2) and (3). The Government has explained that Ms. Maldonado will testify to the foundational data for each tax loss computation. She will describe her methods of identifying the relevant

30

foundational data and walk through the tax loss calculation. To this Court, Ms. Maldonado has adequately explained her methodology, and Defendants are free to cross-examine her on any aspect of her opinion. "It is not for the Court to decide at this stage the credibility of witnesses or the weight to give each piece of evidence; that job must fall to the jury, who is best positioned to make such determinations." *Foote v. State Farm Fire & Cas. Co.*, No. 1:20-CV-02342-RMR-MEH, 2023 WL 8780763, at *4 (D. Colo. Dec. 19, 2023).

The Court notes that Defendants fiercely dispute the Government's use of summary exhibits, with respect to Ms. Maldonado's testimony regarding the "flow of funds" and tax loss calculations. The Tenth Circuit has explicitly permitted the use of exhibits to summarize various transfers between entities and "depict[] the flow of fraud proceeds." *Dermen*, 143 F.4th at 1212-13. Therefore, the Government's use of summary exhibits is permissible to depict "flow of funds." Under the same reasoning, the Government may use summary exhibits to summarize the voluminous tax returns of the taxpayers that used the tax shelter. However, she must additionally explain the principles and methods used with those summaries to come to her tax loss calculations under Rule 702. The Court has ordered the Government to provide their summary exhibits by April 20, 2026. Assuming the Government indeed provides the summary exhibits, Ms. Maldonado's disclosure supporting her expert opinions satisfy Rule 16(a)(1)(G).

**D.     Conclusion**

Accordingly, Defendants' Objections to Government Witness Disclosures for Ms. Maldonado are DENIED. Ms. Maldonado may testify within the parameters outlined in this Order.

## V.     CONCLUSION

For these reasons, it is **ORDERED** as follows:

1) Defendant Marcia Predmore's Motion to Suppress Search of Her Home and Her Electronic Devices Seized Therein (ECF No. 286) is **DENIED**;

2) Defendant Marcia Predmore's Motion to Suppress Statements Obtained From Post-Arrest, Un-Mirandized Interrogation and Request for Related Discovery Pursuant to Fed. R. Crim. P. 16 (ECF No. 288) is **GRANTED IN PART** and **DENIED IN PART AS MOOT**;

   a. The Government is ordered to provide Defendant Predmore with any written or recorded statements made in response to interrogation before or after Defendant Predmore's arrest that are within the Government's possession, pursuant to Fed. R. Crim. P. 16(a)(1)(B);

3) Defendant Marcia Predmore's Motion to Dismiss Count 1 of the Superseding Indictment (ECF No. 287) is **DENIED**;

4) Defendants' Objections to Government Witness Disclosures for Lizeth Maldonado (ECF Nos. 375, 386, 388, 392, 402) are **DENIED**;

   a. The Government shall provide the summary exhibits it intends to use in conjunction with Ms. Maldonado's testimony by April 20, 2026.

DATED:  April 17, 2026

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge